IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| **Harry Brantley,**<br>**Petitioner,** | ) ) ) | |
| **v.** | ) | **1:16cv1014 (LO/IDD)** |
| **Harold W. Clarke,**<br>**Respondent.** | ) ) ) | |

MEMORANDUM OPINION

Harry Brantley, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a conviction of robbery and related offenses entered in the Circuit Court for the City of Hopewell.[1] The matter comes before the Court on a Motion to Dismiss the petition filed by the respondent, to which petitioner has filed a reply. For the reasons which follow, the Motion to Dismiss will be granted, and the petition will be dismissed, with prejudice.

**I. Background**

On July 29, 2013, following a jury trial, Brantley was convicted of robbery, use of a firearm in the commission of a robbery, and wearing a mask in public. Case Nos. CR12-233-234 and -244. He received a sentence of eight years and 12 months incarceration. In denying Brantley's direct appeal, the Court of Appeals described the facts underlying the conviction as follows:[2]

---

[1]Brantley filed a separate § 2254 petition in this court in Case No. 16cv661 (GBL/JFA) concerning convictions entered in the Prince George County Circuit Court. See Order, Dkt. No. 27. By a Memorandum Opinion and Order entered on September 12, 2017, the petition in that case was dismissed, and Brantley took no appeal of the dismissal.

[2]Because a federal court on habeas review of a state conviction must defer to findings of fact made by state trial and appellate courts, 28 U.S.C. § 2254(d), it is appropriate to look to the state

[O]n December 13, 2011, Megan Gammon was working at a McDonald's restaurant. She explained that shortly after the restaurant opened at 5:00 a.m., a man entered the restaurant, grabbed the phone from her hand, and ordered her to open the safe. The masked man took money from the cash drawers and safe and then fled the scene. He had repeatedly asked Gammon where the money was from the day before. Gammon understood the man's requests as pertaining to the restaurant's deposit which is left in the store overnight and then deposited the next morning.

Another employee saw the man with the gun. The intruder pointed the gun at her and ordered her to get on the floor. Arthur Jones, another employee, also saw the man with the gun. The man asked Jones where the night drop bag was, which suggested to Jones that the man currently or previously worked at a McDonald's restaurant.

George Armistead was working at the restaurant when he saw a man standing by the door. Armistead identified the man as appellant at trial. The man was outside and not wearing a mask. Armistead explained the man pulled on the door, which was not yet unlocked as the restaurant had not opened. Armistead went into the bathroom and when he emerged he learned the restaurant had just been robbed. Armistead described the man he had seen outside to the other employees who confirmed the robber wore the same distinctive clothing Armistead described.

Jasmine Reid testified that on the morning of the robbery, appellant was sleeping at her house. He awoke at three or four in the morning and stated he 'was about to go somewhere to make a run.' Appellant returned to the residence before 7:00 a.m., and Reid later found money stacked in her apartment. Appellant refused to state where he obtained the money. Reid also testified she believed appellant had a gun and that she had previously purchased ammunition for him. Reid recognized the jacket the robber is seen wearing in a surveillance video as well as the pink bag the robber had been seen carrying. She explained the jacket belonged to appellant and that the bag belonged to her.

The evidence revealed appellant had worked at the restaurant from 2004 to 2006. When first confronted by the police, appellant provided a false name.

---

court's recitation of the salient facts.

Brantley v. Commonwealth, R. No. 1497-13-2 (Va. Ct. App. Feb. 19, 2014). Brantley sought further review by the Supreme Court of Virginia, which refused his petition for appeal on August 15, 2014. Brantley v. Commonwealth, R. No. 140448 (Va. Aug. 15, 2014).

Brantley initially filed a petition for a state writ of habeas corpus in the Supreme Court of Virginia on December 1, 2014 and voluntarily withdrew it in January, 2015. On March 23, 2015, he filed a second state habeas petition in which he raised the following claims:

A. Counsel provided ineffective assistance by failing to file a motion for discovery and present "exculpatory evidence" to the jury.

B. The Commonwealth engaged in misconduct by failing to disclose the results of a fingerprint analysis.

C. Counsel provided ineffective assistance by failing: (1) to object to the Commonwealth's motion for *nolle prosequi*; (2) to argue "exculpatory evidence;" and (3) to move for a continuance.

D. The evidence was insufficient to prove that he committed the crimes.

E. Counsel was ineffective for failing to raise appealable issues on direct appeal.

F. Counsel was ineffective for failing to object to an in-court identification.

G. The Commonwealth engaged in prosecutorial misconduct by moving for the admission of false and inadmissible evidence, a pink handbag.

H. Counsel was ineffective for failing to object to the false and inadmissible evidence, the pink bag.

The Supreme Court of Virginia dismissed the petition on January 7, 2016. Brantley v. Clarke, R. No. 150452 (Va. Jan. 7, 2016). Brantley's subsequent motion for a rehearing of that result was denied on March 24, 2016.

Brantley then turned to the federal forum and filed the instant application for § 2254 relief by placing it into the institutional mail system on June 22, 2016.[3] Pet. at 15. In it, he makes the following claims:

1. Counsel provided ineffective assistance by failing to object to admission of the pink handbag which was retrieved from an unrelated crime scene and was alleged to have been used in the robbery of which petitioner was convicted.

2. The Commonwealth engaged in prosecutorial misconduct by moving to admit the pink handbag into evidence.

3. Appellate counsel provided ineffective assistance by failing to assign the admission of the pink handbag as error.

4. Counsel provided ineffective assistance by failing to investigate Ms. Reid, petitioner's girlfriend, regarding her testimony for the Commonwealth that petitioner had money shortly after the robbery although he had no job.

5. Counsel provided ineffective assistance by filing a motion for discovery two days before the trial.

6. Counsel provided ineffective assistance by failing to investigate Commonwealth witness George Armistead and the photo array he used to identify petitioner as the robber.

7. Counsel provided ineffective assistance by failing to object and move for a mistrial when the prosecutor's closing argument inflamed the jurors and included his personal opinion.

---

[3]This matter has been pending for an unusual length of time due to confusion that occurred as the result of misfilings in this action and petitioner's other, simultaneously-pending § 2254 case. See Order, Dkt. No. 27.

On October 10, 2017, respondent filed a Motion to Dismiss with a supporting brief and exhibits, and provided petitioner with the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7K. [Dkt. No. 28 - 31] Petitioner filed a reply on November 6, 2017. Accordingly, this matter is now ripe for disposition.

## II. Exhaustion

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987); Rose v. Lundy, 455 U.S. 509 (1982). To comply with the exhaustion requirement, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia first must have presented the same factual and legal claims raised in his federal habeas corpus application to the Supreme Court of Virginia on direct appeal or in a state habeas corpus petition. See, e.g., Duncan v. Henry, 513 U.S. 364 (1995). In this case, petitioner's federal claims 4, 5 and 7 as listed above have not been presented to the Virginia courts and hence are not exhausted.

## III. Procedural Bar

The majority of the claims petitioner makes in this proceeding are procedurally defaulted from federal review. If a state court finds, based on an adequate and independent state-law ground, that a claim is procedurally defaulted from review, then the claim is not reviewable in federal habeas. See Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Williams v. French, 146 F.3d 203, 208-09 (4th Cir. 1998) (internal citations omitted). A state procedural rule is "adequate" if it is "regularly or consistently applied by the state court," and is "independent" if its application does not depend on the federal Constitution. Williams, 146 F.3d at 209 (internal

citations omitted). The only exception to this rule is if the petitioner can show cause and prejudice for the default, or a fundamental miscarriage of justice, such as actual innocence. See, e.g., Harris v. Reed, 489 U.S. 255, 262 (1989) (internal citations omitted).

As to Brantley's federal claims 4, 5 and 7, "[a] claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Gray v. Netherland, 518 U.S. 152, 161 (1996). Importantly, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim." Id. at 162. Therefore, such a claim is deemed to be simultaneously exhausted and defaulted for purposes of federal habeas review. See Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990). Here, because Brantley's claims 4, 5 and 7 would be time-barred were he to try to return with them to the state forum,[4] they are simultaneously exhausted and procedurally defaulted. See Yeatts v. Angelone, 166 F.3d 255, 261-62 (4th Cir. 1999).

Brantley raised federal Claim 2, concerning prosecutorial misconduct in connection with admission of the pink handbag, for the first time in his state habeas corpus petition. Citing Slayton v. Parrigan, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974), cert. denied, 419 U.S. 1108 (1975), the Supreme Court of Virginia held that the claim was "barred because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not

---

[4]Virginia Code § 8.01-654(A)(2) provides:

> A habeas corpus petition attacking a criminal conviction or sentence ... shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal in state court has expired, whichever is later.

cognizable in a petition for a writ of habeas corpus." Brantley v. Clarke, supra, slip op. at 5-6. The Fourth Circuit Court of Appeals has held consistently that "the procedural default rule set forth in Slayton constitutes an adequate and independent state law ground for decision." Mu'min v. Pruett, 125 F.3d 192, 196-97 (4th Cir. 1997). Thus, Claim 2 of this petition is procedurally defaulted.

Similarly, when Brantley first raised federal Claim 3, alleging ineffective assistance of appellate counsel, in his state habeas corpus petition, the Supreme Court of Virginia determined that it was barred by Va. Code §8.01-654(B)(2) and Dorsey v. Angelone, 261 Va. 601, 604, 544 S.E. 2d 350, 352 (2001) because "the claim, the facts of which were known prior to petitioner's first petition for a writ of habeas corpus, was not previously raised." Brantley v. Clarke, supra, slip op. at 4. This reason has been held to be an adequate and independent state law ground preventing federal habeas review of procedurally defaulted claims. See Mackall v. Angelone, 131 F.3d 442, 446 (4th Cir. 1997) (determining the procedural bar of successive habeas applications in Va. Code §8.01-654(B)(2) to be a well-recognized adequate and independent ground). Therefore, federal Claim 3 is procedurally defaulted.

Federal courts may not review procedurally barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris v. Reed, 489 U.S. 255, 260 (1989). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman v. Thompson, 501 U.S. 722, 753-54 (1991); Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990). Importantly, a court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

In his reply to the Motion to Dismiss, Brantley argues that the procedural default of Claim 2 was caused by his counsel's ineffective assistance in failing to raise the issue of prosecutorial misconduct at trial. [Dkt. No. 34 at 1-3] This argument fails to overcome the default, because it is well settled in federal jurisprudence that an allegation of ineffective assistance must itself have been exhausted as an independent claim before it can supply the basis to excuse a procedural default. As the Fourth Circuit has explained:

> Swisher also asserts that he has demonstrated cause stemming from his counsel's ineffectiveness in defaulting this claim. The requisite ineffective assistance, however, "is *itself* an independent constitutional claim" subject to the requirement of exhaustion in state court and to the doctrine of procedural default. Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (emphasis in original); id. at 453 (holding that ineffective assistance claims asserted as cause for procedural default of other claims are themselves subject to procedural default rule); see also [Murray v.] Carrier, 477 U.S. [478] at 488-89 [(1986)] (noting that "the exhaustion doctrine ... generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default"). Swisher does not assert that he can demonstrate cause and prejudice for his default of this ineffectiveness claim. Accordingly, he cannot use ineffective assistance of counsel to demonstrate cause for the failure to raise the use of perjured testimony claim.

Swisher v. True, 325 F.3d 225, 231 (4th Cir.), cert. denied, 539 U.S. 971 (2003). Here, the claim of ineffective assistance upon which Brantley attempts to rely as the basis for his cause-and-prejudice argument with respect to Claim 2 has not been exhausted in the state forum, and it is no longer possible for Brantley to return to the state forum to exhaust it. Therefore, petitioner fails to establish cause and prejudice for his default of Claim 2, and that claim is barred from federal consideration.

As to Claim 3, concerning appellate counsel's alleged ineffective assistance, Brantley argues in his reply that its default should be excused pursuant to Martinez v. Ryan, 566 U.S. 1

(2012). [Dkt. No. 34 at 3-4] In that case, the Supreme Court:

> ... held that a federal habeas petitioner who seeks to raise an otherwise procedurally defaulted claim of ineffective-assistance-of-trial-counsel before the federal court may do so only if: (1) the ineffective-assistance-of-trial-counsel claim is a substantial one; (2) the 'cause' for default 'consist[s] of there being no counsel or only ineffective counsel during the state collateral review proceeding'; (3) 'the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim'; and (4) state law requires 'requires that an ineffective-assistance-of-trial-counsel claim be raised in an initial-review collateral proceeding.

Fowler v. Joyner, 753 F.3d 446, 461 (4th Cir. 2014), quoting Trevino v. Thaler, 569 U.S. at ___, 133 S. Ct. 1911, 1918 (2013). The Fourth Circuit has interpreted Martinez as creating a "narrow exception" to the general rule announced in Coleman v. Thompson, 501 U.S. 722, 754-55 (1991) that "an attorney's ignorance or inadvertence in a post-conviction proceeding does not qualify as cause to excuse a procedural default." Now under Martinez, "inadequate assistance of counsel [or no counsel] at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Id., 566 U.S. at 9. Martinez does not overcome the procedural default of Claim 3 of this petition because the Supreme Court has expressly declined to extend its holding to allow a federal court to reach a procedurally-barred claim of ineffective assistance by an appellate lawyer. Davila v. Davis, __ U.S. __, 137 S.Ct. 2058, 2065 (2017). Accordingly, Claim 3 is procedurally defaulted from federal review.

Brantley also argues that Martinez applies to excuse the procedural default of Claims 4, 5 and 7 of this petition. [Dkt. No. 34 at 8-13] His position in that regard will be discussed *infra* in the "Analysis" section of this Memorandum Opinion.

**IV. Merits Standard of Review**

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on that same claim unless the state court's adjudication is contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Whether a state court decision is "contrary to" or "an unreasonable application of" federal law requires an independent review of each of those standards of review. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court's determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. Under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). Thus, "[t]he question under the AEDPA is not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Mandrigan, 550 U.S. 465, 673 (2007). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). "If this standard is difficult to meet - and it is - 'that is because it was meant to be.'" Burt v. Titlow, 571 U.S. __, 134 S.Ct. 10, 16 (2013) (quoting Richter, 562 U.S. at 102).

**V. Analysis**

In the remainder of his claims, Brantley contends that he received ineffective assistance

of counsel. To establish ineffective assistance of counsel, a petitioner must show that: (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defendant." Strickland v. Washington, 466 U.S. 668, 687 (1984). Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also, Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis"); Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994) (court must "presume that challenged acts are likely the result of sound trial strategy."). The two prongs of the Strickland test are "separate and distinct elements of an ineffective assistance claim," and a successful petition "must show both deficient performance and prejudice." Id. at 233. Therefore, a court need not review the reasonableness of counsel's performance if a petitioner fails to show prejudice. Quesinberry v. Taylore, 162 F.3d 273, 278 (4th Cir. 1998).

In Claim 1, Brantley argues that his counsel was ineffective for failing to object to the admission into evidence of a pink handbag which was retrieved from an unrelated crime scene. When Brantley made this same argument in his state habeas corpus proceeding, the Supreme Court of Virginia rejected it on the following holding:

> [P]etitioner contends he was denied effective assistance of counsel because counsel failed to object to the admission of the pink bag on the grounds that it was inadmissible evidence from another crime and irrelevant.[[5]]

---

[5]In addition to the robbery of the McDonald's restaurant on December 31, 2011, Brantley was charged with the robberies of four other businesses on December 2, 16, and 18, 2011, and January 18, 2012. The jury found him not guilty of those offenses, and an additional charge relating to the robbery of a laundromat was dismissed when a witness failed to appear for trial. Brantley v. Clarke, supra, slip op. at 2.

> The Court holds that [this] claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that no evidence was admitted at trial tending to link the pink bag to any crime other than those for which petitioner was being tried. Further, several witnesses testified that the person who robbed them was carrying a pink bag, and Reid identified the pink bag in the video of the McDonald's robbery and the pink bag admitted at trial as a bag that had belonged to her. Reid established the bag had disappeared from her closet while petitioner was living with her. Under the circumstances, counsel could reasonably have determined the bag was relevant and was not inadmissible evidence of another crime and that any objection to its admission on those grounds would have been futile.

Brantley v. Clarke, supra, slip op. at 6.

The foregoing holding by the Virginia court was based on a reasonable determination of the facts. In addition, for the reasons explained by the court, it comports with the well-established federal principle that an attorney has no duty to make meritless arguments or objections. Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005) (citing Murray v. Maggio, 736 F. 2d 279, 283 (5th Cir. 1984). For these reasons, the claim likewise must be rejected here. Williams, 529 U.S. at 412 - 13.

In Claim 6, Brantley argues that he received ineffective assistance when counsel failed to investigate and interview George Armistead, a Commonwealth witness, who testified at trial regarding his out-of-court identification of petitioner from a photo array.[6] Because a police

[6]Respondent takes the position that this claim is unexhausted, and that it is insufficiently substantial for the Martinez exception to apply. Resp. Brief at 10 - 11. In the Court's view, it appears instead that the claim was exhausted when it was rejected on the merits in Brantley's state habeas proceeding. Even though Brantley phrases the claim slightly differently in this federal action than he did in state court, the discussion expressed in the Virginia Supreme Court's opinion leaves no doubt that the substance of the claim was the same in both proceedings. Moreover,§ 2254(b)(2) now permits a federal court, in its discretion, to deny on the merits a habeas corpus claim despite the applicant's failure to exhaust available remedies in state court, see Swisher, 325 F.3d at 232-33, so

officer testified at trial that Armistead did not do so, Brantley contends that the identification was unreliable. When Brantley made this same argument in his state habeas proceeding, however, the Supreme Court of Virginia rejected it for the following reasons:

> In claim (F), petitioner contends he was denied the effective assistance of counsel because counsel failed to object to the in-court identification of petitioner by George Armistead on the grounds that it was unreliable. Petitioner alleges that Armistead testified he picked petitioner out of a photo array but that Armistead's testimony was contradicted by an officer who testified Armistead had not picked anyone out of the array. Petitioner further alleges he was the only black person in the courtroom who was on trial for robbery when Armistead identified petitioner, and that Armistead admitted he had learned petitioner's name from the news.
>
> The Court holds that [this] claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that Armistead saw petitioner outside the McDonald's prior to the robbery. Armistead noticed petitioner because he attempted to enter the restaurant before it was open, made a rude noise when he discovered the doors were locked, and then waited outside for the restaurant to open. Armistead then went to clean the bathrooms and was unaware of the robbery that occurred moments later, after the restaurant opened. Armistead testified he was positive the man he saw outside the restaurant was petitioner and described him as wearing a white hoodie with red, yellow and black lines "all swirled around it." Other employees testified the person who robbed the restaurant shortly after it opened at 5:00 a.m. was wearing a white hoodie with a "colorful" design on it and a mask. A video of the robbery was admitted at trial, and petitioner's former girlfriend, Jasmine Reid, viewed the video and testified she recognized the hoodie was belonging to petitioner. Reid also identified the pink bag the robber carried as one that had belonged to her before it disappeared from her closet. On the morning of the robbery petitioner had woken Reid between 3:00 a.m. and 4:00 a.m., telling her he had to "make a run." Petitioner left the home he shared with Reid in her car, returning between 6:00 a.m. and 6:30 a.m.

---

even if some minor discrepancies could be found to exist between the claim as exhausted in the state forum and the claim asserted here, the Court will exercise that discretion in this instance.

> Armistead testified he was shown two photo arrays. He did not see the man who he had observed outside the restaurant in the first array, but selected petitioner's photograph from the subsequent array, which was shown to Armistead at his house at a later time. After he identified petitioner, Armistead learned petitioner's name from the television and other restaurant employees. Detective Shayla Nelson testified she showed a photo array to some of the restaurant employees, including Armistead, and that no one, including Armistead, had identified anyone from that array.
>
> Under the circumstances, counsel could reasonably have determined any motion to suppress Armistead's identification of petitioner on the ground that he had learned petitioner's name from the television and other employees would have been futile. See McCary v. Commonwealth, 228 Va. 219, 234, 321 S.E. 2d 637, 645 (1984) (identification not tainted by witnesses learning defendant's name from outside source where witnesses had ample opportunity to view robber before crime and demonstrated high level of certainty in identification). Further, counsel could reasonably have determined any discrepancy between the testimony of Armistead and Nelson impacted the weight to be accorded their testimony, not its admissibility, and that any objection to the admissibility of Armistead's identification of petitioner on those grounds would have been futile. Additionally, counsel could reasonably have determined there was nothing unduly suggestive about petitioner's status as the sole defendant in the criminal trial and that any objection to Armistead's identification of him on those grounds would be futile. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Brantley v. Clarke, supra, slip op. at 4 - 5.

For the reasons which were amply explained by the Supreme Court of Virginia, Claim 6 satisfies neither component of the Strickland test. As the Court observed, Brantley's contention that the testimony of witness Armistead and that of Officer Nelson were contradictory is incorrect, and any attempt by counsel to object to either the out-of-court or the in-court identification on that basis would have been futile. Since an attorney cannot be faulted for failing

to make meritless objections, Moody, 408 F.3d at 151, the Virginia court's rejection of this claim was based on a reasonable interpretation of the facts and was in accord with controlling federal principles, and the same result is compelled here. Williams, 529 U.S. at 412 - 13.

As noted above, Brantley also argues that ineffective assistance of trial counsel furnishes the cause for his procedural default of claims 4, 5 and 7 of this petition. In Martinez, however, the Supreme Court stressed that "[t]o overcome the [procedural] default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 132 S. Ct. at 1318. It is the petitioner's burden to demonstrate that his claims are "substantial." Fowler, 753 F.3d at 461. Here, Brantley fails to make such a showing as to any of his defaulted claims of ineffective assistance.

In Claim 4, Brantley contends that his attorney provided ineffective assistance by failing to investigate Ms. Reid, his girlfriend, who testified for the Commonwealth that Brantley had money shortly after the robbery although he did not have a job. This argument satisfies neither prong of the Strickland analysis. As noted above, Ms. Reid was living with Brantley when he committed the robbery, and she testified that on the morning of the crime Brantley woke her between 3:00 a.m. and 4:00 a.m. and said he had to "make a run." He left the house in her car and returned between 6:00 a.m. and 6:30 a.m. [Tr. 4/25/13 at 284] Although Brantley was going to school and was not working at this time, Reid subsequently observed a stack of money on a table in the living room. [Id. at 285-86] When Reid asked him about it, Brantley told her not to question him and she "left it alone." [Id. at 286] Despite Brantley's current contention that his counsel failed to investigate Reid prior to trial, Brantley testified in response to her testimony that he was working for his father because he had just been released from prison, and his father "gave

[him] ends, you know, every now and then to get by." [Tr. 4/26/13 at 21] In addition, Brantley testified that he obtained money by collecting and selling scrap metal. [Id. at 23 - 24] When Reid asked him where he was getting money, Brantley told her not to worry about it based on his "logic" that he "was just coming out of prison" and he was "too embarrassed to tell her" because she was "a nice girl." [Id. at 24] Here, Brantley fails to proffer or even to suggest what additional, exculpatory information any investigation of Ms. Reid would have uncovered, nor does he show how he was prejudiced when no such investigation was performed. Accordingly, the claim of ineffective assistance he makes in Claim 4 is not substantial, and the exception announced in Martinez does not excuse its default.

In Claim 5, Brantley alleges that counsel was ineffective for filing a motion for discovery two days before trial. Brantley contends that as a result of this lack of preparation by counsel, he felt compelled to disregard counsel's contrary advice and testify. This argument fails because Brantley has not proffered the manner in which counsel might have been differently prepared had the motion been filed earlier, or the manner in which its alleged late filing impacted the trial. Absent such a proffer, Brantley has failed to make out a substantial claim of ineffective assistance. Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (to succeed on a claim of ineffective assistance predicated on inadequate investigation, a petitioner must allege "what an adequate investigation would have revealed"); see also, Anderson v. Collins, 18 F.3d 1208 (5th Cir. 1994)(quoting United States ex rel. Partee v. Lane, 926 F.2d 694, 701 (7th Cir. 1991)) (""[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply

Strickland's standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiency in counsel's performance.'") Under these circumstances, Claim 5 does not represent a substantial claim of ineffective assistance, and Martinez does not excuse its default.

In Claim 7, Brantley contends that counsel provided ineffective assistance by failing to object to the prosecutor's improper closing argument, which allegedly inflamed the jurors and included the prosecutor's personal opinions. Brantley contends that counsel should have objected to the prosecutor's statements that: (1) he was guilty; (2) he admitted "stealing ... stuff"; and (3) the pink handbag might appear to be a different shade on the videotape. Counsel could reasonably have determined, however, that these arguments were reasonable inferences from the facts of the case as established by the evidence, and any objection thus would have been meritless. '[T]he purpose of closing argument is to draw the jury's attention to the body of evidence that has been admitted into the record and to argue reasonable inferences that may be drawn from that evidence.' Wakole v. Barber, 283 Va. 488, 492, 722 S.E.2d 238, 240 (2012). The jury in this case heard testimony that Brantley was at the scene of the robbery wearing the clothes that could be seen on the restaurant's security video and that he made his money "grabbing" items such as washing machines and lawn mowers and selling them for scrap metal. [Tr. 4/26/13 at 23] It is well established in federal jurisprudence that a lawyer's "'strategic choices ... are virtually unchallengeable'" Gray v. Branker, 529 F.3d 220, 229 (4th Cir.), cert. denied, 556 U.S. 1106 (2009). Thus, an attorney's routine judgment as to whether to object and draw further attention to an issue will not support a claim of ineffective assistance. Evans v. Thompson, 881 F.2d 117, 125 (4th Cir. 1989). Here, since nothing in the Commonwealth's closing argument was sufficiently egregious to demand an objection, counsel's tactical decision

not to do so does not amount to ineffective assistance, and Brantley's reliance on Martinez to excuse the default of Claim 7 must be rejected.

Lastly, it is noted that Brantley's reply to the Motion to Dismiss includes a request for an evidentiary hearing. [Dkt. No. 34 at 15] The Supreme Court has established that review of a habeas corpus claim under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim. Cullen v. Pinholster, 563 U.S. 170 (2011). Therefore, petitioner's request for an evidentiary hearing must be denied.

## VI. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss this petition will be granted, and the petition will be dismissed with prejudice. Petitioner's request for an evidentiary hearing will be denied. An appropriate Order and judgment shall issue.

Entered this 10th day of April 2018.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge